**GIBBONS AND REED COMPANY, a Utah Corporation, Plaintiff and Appellant,**

v.

**OGDEN CITY, a Municipal Corporation, et al., Defendants and Respondents.**

No. 14030.

Supreme Court of Utah.

Dec. 26, 1975.

Bryce E. Roe, of Roe & Fowler, Salt Lake City, for plaintiff-appellant.

Vernon B. Romney, Atty. Gen., Leland D. Ford, Asst. Atty. Gen., Salt Lake City, Jack A. Richards, Ogden City Atty., Paul Thatcher, Ogden, for Robin and Hardy Scales.

HENRIOD, Chief Justice:

Appeal from a no cause of action judgment favoring defendants in a non-jury action based on an "option" agreement attending the alleged purchase and sale of certain road building materials. Affirmed with costs to defendants.

Preliminary talks between representatives of the defendants, except Robin and the Scale Company, led to the execution on September 30, 1965, (with a December 31, 1966, termination date) of an "option" agreement mimeographed by the Commission, the salient provisions of which were:

For $1.00 consideration, Ogden City, as owner, agrees to sell to the Utah Road Commission "road building material from" its described property; that *"if and when . . ."* the "option is exercised," the Commission agrees to pay 3¢ per cubic yard therefor; that the option might be exercised "by any agent or contractor" of the Commission.

Under a part labeled "Special Stipulation," it says: *"This option is for the purpose of establishing the price"* of materials to be taken, and "shall also cover *special conditions affecting their availability* and removal," and that "it shall *not* be construed to mean that the Road Commission shall have a *sale* or *prior* right to all materials on the above described property for the entire duration of the option. The owner or *its authorized* representative shall be contacted and *essential arrangements made* for each or any occupancy or removal of materials. All stipulations regarding work areas, conditions in which property shall be left and any other pertinent agreements *shall be made before entry is* *made upon the property* for the purpose of removing any road building material.

Furthermore: "The *removal* of any material . . . must *positively be removed to the owner's lines and grades."*

The trial court, among other things, made Findings to the effect that the document was prepared by the Commission; Gibbons & Reed was invited to bid on a road project, furnishing the latter with a copy of the option; that before bidding on the job, Gibbons & Reed discussed the terms of the instrument with one Kimball, Ogden City's assistant engineer; that there was no preponderant evidence of Kimball's authority to represent the city as to terms, —particularly as to amount of any available material; that thereafter the Commission and Gibbons & Reed signed the contract; that on May 20, 1966, Ogden sold the property to Robin, reserving "all coal, oil . . . gravel and all other materials"; that Gibbons & Reed, although knowing of the sale, never contacted the buyer, Robin, about occupancy, or removal of materials; nor did they communicate with him concerning those matters or attempt to fix any "lines or grades" for such removal; that any damages suffered were not the result of breach of any contract or misrepresentation by any one and that said "option" was not represented as being binding for any fixed amount of materials.

From the facts, the court concluded that the so-called "option" was incomplete, and not a binding contract,—lacking in definition as to the amount of material contemplated,—and being in reality but an understanding of the price for whatever amount of materials taken might be established at a later date, and consequently that the so-called agreement legally was ineffective for lack of specificity.

It would appear that this case concerns itself with a matter of mixed law and fact, and we think that the trial court's decision would not be refutable if determined either on the law, or the facts.

An examination of the wording of the document will reflect little support for the

conclusion that the minimal terms of a contract, *under the law,* were present here.

There is nothing here indicating the amount of material agreed upon; the time within or during which performance is required. It was as compatible with perpetuity, as with a definitive hour-glass measurement. The provision here as to performance "if and when the option is exercised," is vulnerable to a similar contractual deficiency; the provision that "This option is for the purpose of establishing the price," seems meaningless without a recitation of the amount of material agreed upon,—absent here, or, again, a recitation of the time for payment. The "special conditions affecting the availability" of the materials,—unresolved but seemingly determinable in futuro, almost reaches the assumption that it is an agreement to agree, failing which, none exists. The statement that the agreement shall *not* be construed as a *sole* or *prior* right to the materials leads one to conclude that Ogden could have sold not only the "materials" but the fee at any time before a firm contract was born,—which certainly was no fait accompli here; the provisions about arrangements to be made for occupancy or removal and stipulations for work areas and "any other pertinent agreements" shall be made *before* entry to remove material is accomplished in futuro, surely does not lend itself to the basic concept under obligation of contract's principles that the terms must be certain.

As to the facts recited, those mentioned in plaintiff's brief are accurate enough, but by and large, are most favorable to plaintiff's contention. Other believable facts either discount some that are stated in favor of plaintiff or lead to a reasonable refutation, or at least to an entirely different scenario. They would appear to be of the type looking to the supplying of terms found *missing* in the instrument,—not in explaining *confused* terms contained therein. Such procedure would seem to be unacceptable in evidentiary areas.

We believe that on top of the correctness of the trial court's analysis of the terms of the "option," there is ample, believable, competent and admissible evidence that if believed by the court, as seems to be the case here, make inescapable the requirement that we do anything else but affirm under the accepted rules.

Since we conclude that the trial judge was correct in his deliberation both as to the law and the facts, to the effect there was no binding contract, we believe and conclude that the other points on appeal—II, as to estoppel, III, IV and V re: breach and VI, relating to damages—are moot and that VII, to the effect that the Court failed to make certain findings and those made were insufficient to support the judgment, is without merit, and that VIII, with respect to the matter of filing for costs, may be determined by the lower court.

ELLETT, CROCKETT, TUCKETT and MAUGHAN, JJ., concur.